before us today is the estate of Roemer versus Chihuahua number 17-1418 counsel will you make your appearance good morning my name is Elizabeth Owen I represent the estate of James Roemer it is either true that a failure to protect claim requires proof of a defendant's subjective knowledge or that a failure to protect claim accrues when a prisoner himself becomes aware of a risk to his safety but those two things cannot be true at the same time the problem with the district courts order in this case is that it implies that both of those things are true at the same time which creates a really practical conundrum that is frankly irreconcilable in determining the accrual date for a the court must determine when the constitutional claim when the constitutional violation occurred an eighth amendment claim as everyone knows there are two prongs there's an objective prong which looks at whether there was an actual risk to a plaintiff's safety and there's a subjective prong the subjective prong requires determination of what a defendant actually knew in this case there are multiple defendants who knew different things about the risk that Paul Farley posed to James Roemer in prison what the district court has done is conflated each of the defendants knowledge and determined based on a single conversation with one of the defendants that frankly in and of itself does not an eighth amendment claim make and applied the fact that that conversation happened to each defendant wholesale and determined that the plaintiff's claims were time barred by ten days Mr. Roemer was murdered on June 13, 2012. He had a conversation with an officer in his unit earlier that month, ten days before that. In that conversation he said to Officer Boyer, I don't want to live with Paul Farley anymore. But unpacking that conversation there are a lot of things that Mr. Roemer, so it's fair to say that Mr. Roemer knew that Paul Farley was scary. Mr. Roemer knew that there was a risk posed to him by Paul Farley. It is not fair. Did he also know that, I think it's Boyer, that he had the conversation with? Did he also know that Boyer knew of the risk at that point? Well, that's an interesting question, Your Honor, because I know. The problem is, it gets right to the heart of the matter. The problem is that Roemer in that conversation didn't know what Boyer knew. So the really key evidence in this case is the records, the prison records about Paul Farley. It's not just that, you know, two inmates didn't want to live together. Well, he didn't just say, I don't want to live with him. Didn't he communicate safety? It's a safety concern. I don't want to live with this guy. My life is in danger. Are there safety? What more do you need to know? Full stop. Period. Sure. I don't know that the conversation was even that specific, Your Honor. The evidence of this conversation comes from a declaration of Gary Ewing, who was a prisoner who worked for Mr. Boyer.  It's not clear that James Roemer said expressly, I don't want to live with Paul Farley because I'm afraid of him. Rather, he said, I don't want to live with Paul Farley. And Ewing took the implication of that comment to be that Roemer was afraid. But there's not record evidence even that Roemer said specifically because he was afraid. So our theory of this case, I want to be clear, I'm not walking myself into the absence of a deliberate indifference claim against Boyer. Our theory of this case is that it's the combination of that conversation that Roemer had with Boyer and Boyer's independent knowledge of who Paul Farley was and where Paul Farley had come from, from a disciplinary and misconduct standpoint. Those two things together make Boyer's deliberate indifference. But clearly, Boyer's deliberate indifference. Boyer's deliberate indifference doesn't have anything to do, frankly, with Shawaga's deliberate indifference, with Johnson's deliberate indifference, with Algian's deliberate indifference, or really even Feldstein's. So you don't accept the premise that this claim could have accrued as to Boyer. At the time that the conversation took place, and the only evidence we have is evidence that indicates that safety was mentioned in that conversation. And if Boyer turns around and says, oh, well, have a good day, that's not deliberate indifference? I don't think so, Your Honor. I mean, I wouldn't take that case. That fact alone, I wouldn't take it. Well, I'm not asking you whether you'd take it. I'm asking whether the law would support the notion that he didn't inquire. The guy ends up dead. The guy says, let me out of here because I have a safety concern. How much more explicit do you have to have before Boyer would have at least been on duty to inquire? Sure. I mean, if there is a duty to inquire, I think that's fair, Your Honor. So I think it requires a combination of at least a duty to inquire. But, again, going back to what Romer knew at the time of that conversation, what Romer knew that Boyer knew. So where do you get all of this from? You're saying that Vasquez supports it. We've got to get in the head of every defendant and know, well, Romer has to know everything that this defendant knows about my situation, so that they can form deliberate indifference? I don't see anything in Vasquez that supports that. What Vasquez supports is the idea that the inquiry should be made on a defendant-by-defendant basis. That's right. And that's about it. Sure. Right. And that's it. So this inside-his-head stuff, where do you get that from? I mean, it's the logical conclusion of that. And what I mean by that, Your Honor, is that it requires looking at – so let me explain it this way. If we back up to the defendant's argument in this case, all the defendant said was that the claim is time-barred because Romer knew that he faced a risk of harm from Farley. That does not – keeping in mind that this is the defendant's burden, right, to prove the statute of limitations, that does not have anything to do with what the defendant knew or whether Romer should have known on the date that the district court held that this claim accrued. That doesn't have anything to do with whether Romer should have known what the defendant knew. So what I say, like, the requirement that you sort of have to – maybe it's inaccurate, Your Honor, to say that they have to get into, you know, the defendant's head, but it's an interesting sort of multilayered analysis because you have to take the standards that the plaintiff – and then apply that in the context of the plaintiff knowing what the defendants know, right? So – And aren't the – isn't the underlying premise of statute of limitations that they're supposed to be fairly clear and allowing you to know when a claim accrues and when it doesn't? That's what limitations are about, right? Yes. Well, this metaphysical conversation that we're having right now, how is that congruent with that level of clarity that we're talking about? I would describe it as entirely not metaphysical, Your Honor. I think there's a very practical way to look at this problem, which is to say, if James Romer had gone out and filed a lawsuit on, you know, June 10, 2012, right before he died, right? Like, in this 10-day period, what would have happened? He would have filed a complaint that said, I'm scared of Paul Farley. I had a conversation with Boyer about it. And Boyer – I told Boyer of the – I was scared of my safety, right, for my life. And Boyer ignored my complaint. Right. So as to Boyer, why isn't it there? Why isn't the accrual, at least as to Boyer, disregarding right now your argument about the other defendants? And it may be, Your Honor. I think that the – just being frank, I think that the law requires more than saying I'm scared. I think that, you know, this Circuit's decision, there has to be, you know, I'm scared plus some objective evidence that the fear is reasonable, right? Everybody is scared in prison all the time. Every person in prison is scared. Moving beyond Boyer, let's go to this notion of the knowledge of – well, the mindset of every defendant, the deliberate indifference of every defendant that Vasquez might – appears to contemplate, and that determining when the cause of action would gel such that accrual would take place. At what point, as to the other defendants, would Mr. Romer or have known or reasonably should have known as to their deliberate indifference? First of all, Your Honor, I think it's the defendant's burden to answer that question. I will answer it, but I want to make clear that the defense has not at one point answered that question. I understand that it's their burden, but you're here on appeal. Absolutely. All right. So, the point at which Mr. Romer should have known that each of these defendants, you know, played a role in creating the risk that Mr. Farley posed to him is the point at which information that supports that conclusion became available to him. In this particular case, let's look at Chihuahua specifically. The information about the fact that Chihuahua knew of Farley's history in the Arizona Department of Corrections, reviewed that history in the context of an ADSEG hearing and declined to ADSEG Mr. Farley, that information only became – the estate only became aware of that information when Mr. Farley released his prison records to us. And so, to answer your question, Your Honor, I mean, I think you have to examine how Mr. Romer would have himself obtained access to that information, and the answer is it's impossible. Well, the key word there was the estate came to be aware of that. The estate and Mr. Romer are not the same entity, correct? Well, I think for purposes – I don't take issue with the district court's conclusion that Mr. Romer's knowledge must be imputed to the estate. They're not the same entity. No, no, no, but the estate's knowledge can't be imputed to Mr. Romer. That's the operative point. So, if the estate learns of a defendant's deliberate indifference five years after Mr. Romer is dead, that does not form the basis for then the accrual as it relates to that defendant, does it? If it was reasonable for the estate to only have learned that information five years after Mr. Romer is dead, then my answer to your question is yes. And what – all right, I'm glad you've given me that answer. Give me the law that supports that answer. What case supports that answer? Listen, Your Honor, I will readily admit that there is not a case directly on point that deals with the statute of limitations in the context of an Eighth Amendment failure. Give me one not directly on point. But this court, and Your Honor, Judge Holmes, sat on the panel of this court earlier this year on September 21, 2018. There's an unpublished decision in this circuit, Jamerson v. Heimgartner, case number 18-3101. And this court said Jamerson was analyzing the statute of limitations in a failure-to-protect claim, and that case was filed far too late. But this court used the words that the plaintiff was aware of the defendant's mental state and altercation on a particular date, and that was the date that fixed the accrual. And I think that's exactly what we're talking about. I agree with the court's conclusion. I am not – I'm not – I'm not – Well, unless I'm getting early-onset Alzheimer's, Jamerson had nothing to do with the question I asked you, which is how can you map on the estate's knowledge to Mr. Romer? And that's – that's the point that we're talking about. And what authority would support that? I gave you the five-year hypothetical, and you bought that hypothetical. So explain to me what authority would support that. Well, Your Honor, I mean, to the extent – again, going back to the principle that the estate is bringing a claim as Mr. Romer would have had it had he survived, right? I mean, to the extent this is a survival action, the knowledge of one is the knowledge of the other. The knowledge of Mr. Romer is the knowledge of the estate. The knowledge of the estate is not the knowledge of Mr. Romer, is it? And that's where I'm asking, if I'm wrong, give me some authority that supports that. Well, I mean, the estate is the plaintiff, right? Like, once an inmate dies, the estate becomes the plaintiff. So I apologize for being dense here, but I just don't see how the estate's knowledge is not the only knowledge that matters. The estate stands in the shoes of Mr. Romer. Right. If Mr. Romer didn't know it, the estate doesn't know it. Right. If Mr. Romer died 10 days after he was supposed to first have become aware of information. I understand that. Claim to a crypt. I guess your position is, if I'm understanding it, is in that 10-day period, or even prior to that conversation with Officer Boyer, that Mr. Romer clearly didn't know and did not have reason to know of the other four individuals' involvement. Yes, Your Honor, that's absolutely right. And then he died. And so the only person who can find out that information is the estate. And even if the estate could have found it out sooner, perhaps through some efforts on their own part, it still would have been – there wouldn't have been a timeliness question, because we're only talking about that 10-day period. Yes. Are you alleging individual constitutional violations as to each of these defendants? Just to make sure I understand the court's question, I mean, is it – I'm sorry, I see I'm over time. Would you like me to answer that question? The court's question is, is it a distinct constitutional violation with respect to each defendant? I mean, I think so. You know, it's one claim, right? Well, it is and it isn't. I see your claims being different as to pretty much each of the defendants' different time period, different actions. Yes. And I presume that that's why you're saying that we can't – they can't all be lumped into one boat with – Yes. The theories of viability – The actions were different. Yes. The theories of viability against each defendant are distinct. And, you know, we actually broke out sort of the categories of theory in our briefing. So, yes, I agree with Your Honor. Okay. I just want to ask a follow-up question. Yes. Did I understand you correctly to say that Mr. Romer, within that 10-day gap, which would have brought you within the statute of limitations, he did not know, nor through an exercise of reasonable diligence, could he have known, should he have known, of the deliberate indifference of the non-Boyer defendants? Yes. That is absolutely what I said. Okay. Good morning, and may it please the Court. My name is Glenn Roper from the Colorado Attorney General's Office on behalf of these defendants. I recognize that this is a sympathetic case, both because of the tragic underlying facts and because the statute of limitations, by definition, cuts off what might otherwise be meritorious claims. At the same time, there are well-recognized reasons why legislatures enact limitations periods, and this Court has repeatedly held that those limitations must be respected. Everyone agrees in this case that the applicable limitations period was two years. It's also undisputed that none of the defendants' allegedly unlawful actions took place within the two years prior to the plaintiff filing the lawsuit. Therefore, this 1983 claim was filed too late unless either the cause of action did not accrue prior to Mr. Romer's death, or there's a basis for tolling the limitations period. And the District Court denied plaintiffs' arguments as to both of those issues, and this Court should affirm. As to the first issue, the accrual issue, plaintiffs' theory on summary judgment was that the cause of action accrued at Mr. Romer's death, and that's because it was treating it like a wrongful death action. Eventually, the plaintiff recognized that's not the appropriate framework for an Eighth Amendment claim and switched to the current theory, which is that the cause of action accrued defendant by defendant based on when the plaintiff learned sufficient facts to allege deliberate indifference by each defendant. And as to several defendants, as I understand the plaintiff's argument, it is that that didn't even happen until well into discovery and depositions. This is an unprecedented argument, and I think plaintiffs have conceded that there is no case that has applied the statute of limitations in this manner. Instead, this Court has repeatedly directed that the focus is on the plaintiff's awareness of the injury. A cause of action accrues when a potential plaintiff knows or reasonably should know that he has been injured and that the injury was likely caused by wrongful conduct. And when could this plaintiff have known that as to the non-Boyer defendants? When could he either have known or reasonably should have known of their wrongful conduct? If Mr. Romer had never had this conversation with Mr. Boyer, that would be a trickier question. And I'm not sure exactly what the answer is, but it really doesn't matter for purposes of the statute of limitations. All that he has to know is that he has been injured and that it was likely caused by wrongful conduct. What is the injury in this case? I'm sorry? What is the injury in this case? The injury is being placed in contact with a dangerous inmate and then having the prison officials be indifferent or be unwilling to abate that danger. Well, the wrongful conduct is not the same as it relates to all of these defendants. I mean, he's alleging different wrongful conduct as it relates to the defendants. Therefore, the question is, and it seems to me it is relevant because, I mean, you could argue, although apparently they are not arguing, you could argue that through reasonable diligence within that 10-day period of time, Mr. Romer could have learned of a reason, could have learned enough to establish the deliberate indifference of the non-Boyer defendants. In other words, after Boyer said, well, didn't do anything, arguably Mr. Romer could have learned that there were policies in place that would control whether you move this guy out of my cell or not. Right? And I think that's right. And as soon as he had that conversation with Mr. Boyer and recognized that he was not getting the help that he had asked for, that it was incumbent upon him to figure out who was responsible for that. That isn't what your argument has been, though. I think you've been relying entirely on the fact that he knew that there was a safety risk and that Boyer was aware of it because he told him. I don't see any of your argument being that somehow it was possible that in that 10-day period he could have uncovered the various actions of the other defendants and how they played into his injury. And accrual is a factual question and there would need to be some factual discovery as to that point. I'm just saying you haven't argued that. You were putting all your eggs in one basket and it was the Boyer basket. And I would say that is consistent with this court's decision in Alexander v. Oklahoma, which made clear that for the cause of action to accrue, you don't need to know the details of the injury. Well, Alexander wasn't in a municipal liability claim. There weren't claims against individual defendants. And you've got to set forth, in order to state a cause of action in these claims, you've got to state what the individual responsibility was. That's exactly right. But I think it's important to separate what you need to be able to state a claim under Rule 8 and what triggers the start of the statute of limitations. Those are very different. And all that you need is awareness of the injury and awareness that it's likely caused by wrongful conduct. I would point this court-  I don't think we know the answer to that specifically because- If we don't know the answer to that, then we can't hold them to be bound by the statute of limitations. Let me finish my answer to that, which is we don't know exactly when that accrued, but we know it at least accrued by the time that he spoke to Mr. Boyer about 10 days before his murder. He could have gained that information or reasonably learned that information prior to that time. We don't have facts or information about that, but we know at least by the date when he had the conversation with Mr. Boyer that he was aware of both of the risk that he faced and that prison officials were unwilling to take steps to abate that risk. If on that date he filed suit, what would he have alleged, which constitutes a 1983 action? And again, I think it's important to separate his ability to state a claim or prove his case entirely and the accrual of the cause of action that triggers the start of the statute of limitations. There are always additional things that need to be done in between when a cause of action accrues and when the claim is filed. There's gathering of additional facts. Well, but he hasn't, as I read the briefs and the evidence in this case, up until he's killed, he doesn't have any facts from which he can satisfy the requirements to file a 1983 cause of action. And again, I think it would be a mistake to equate the pleading standard with accrual of the statute of limitations. Our position is by the time he met with Mr. Boyer, he knew enough. He knew of the danger that he faced from Mr. Farley, and he knew that prison officials were unwilling to abate that danger. You used prison officials, plural. These are, Vasquez tells us, we're looking at the individual defendants. And so what he knows as to Mr. Boyer doesn't tell us anything about what he knows as to the others. And the wrongful conduct that we're talking about is not the same. It's deliberate indifference, but the conduct that gives rise to the deliberate indifference is not the same, is it? And I think Vasquez actually supports our argument. If you look at how the court applied the statute of limitations in Vasquez, you had a group of four defendants who all acted at different periods of time, all before the two years, well before the two years prior to when the case was filed. And they treated and interacted in different ways. Yet when the court addressed the statute of limitations as to them, it grouped them together and concluded that the cause of action had accrued at the latest when the defendant was aware that he had been substantially harmed. So the way that it was applied in Vasquez is consistent with what you're arguing. Well, the issue there was the objective prong, not the subjective prong. Here the issue is the subjective prong, his knowledge as to what they knew or what their deliberate indifference was. What did he know about each of these defendants? What did he know about each of these defendants as to their disregard of the substantial risk to him? And it was different, as it turns out, as to each of the other four defendants. What did he know or should have known in that 10-day period? But again, I think that was also present in Vasquez, where it was an Eighth Amendment claim and he did have that subjective piece as well. And our position is he didn't need to know for the statute of limitations to begin accruing. He did not need to have this specific information or even knowledge as to who all these defendants were. But he had individual claims against individual actors. And Vasquez uses the language knew or reasonably should have known separately for each of these defendants. And so for each defendant, he has to know there has been deliberate indifference. And when that deliberate indifference is clothed in different conduct, then he would have to have some he knew or through reasonable diligence should have known of the conduct giving rise to the deliberate indifference, right? And again, our position is that is not necessary to know for each defendant for the cause of action. Well, that may be your position. How does that work? Vasquez uses that language. I just read it. Tell me why that language is congruent with your position. So I think that the language in Vasquez is actually a little bit unclear, because in that same sentence, the court uses the phrase to be liable, indicating that the court was was talking about liability, not just accrual. But in any event, I think the court was was interested in this separate accrual point, because in addition to that group of four defendants, you also had a separate defendant, Dr. Fovell, whose only actions took place within the two years prior to the filing of the lawsuit. Yes, but the whole point of getting to Fovell was that you separated out and disaggregated the defendants to make that determination. And the point here is, to Judge Marissa's point, you put all your eggs in one basket, the Boyer basket. And if you're looking at Vasquez, Vasquez suggests that at bottom fundamentally is wrong. And if this court were to hold that Mr. Romer had to have specific knowledge about the subjective knowledge of each of the defendants before the claim would accrue, then I think we would lose. But again, I don't think that's required under Alexander, under Domeni, and the cases we cite on pages 38 through 41. Which of those cases were claims against individual defendants that were required? I couldn't tell you that off the top of my head. But I would point this court to an earlier decision this year in Glasser v. King, an unpublished decision. It was a 1983 case. It was an Eighth Amendment case. I believe both Judge Holmes and Judge Morris were on the panel there. The plaintiff argued that he could not have known about the culpability of certain defendants until he took their depositions and gained information there. This court rejected that argument. This court said it's not enough because a plaintiff has an obligation to diligently pursue and gain the facts to understand to be able to state that claim. But this plaintiff died. He was murdered ten days later. That's different. What could he have done in that ten days? And that doesn't seem to be what your argument is anyway. You're right. It does not rest on what could he have done in those ten days because that obligation also, the estate also had that same obligation. And again, I think it's important to keep in mind that accrual just means that the clock has started. It's a starting point. It's not a cutoff. As this court said in Alexander, once a claim has accrued, a plaintiff must use reasonable diligence in seeking to discover facts giving rise to a claim for relief. The period of the statute of limitations is the time to do that. Well, the court there is talking about discovering what has already occurred, not about what has occurred subsequently. Well, I read it a little bit differently. I read the court to be saying in Alexander and similar cases that once the plaintiff or potential plaintiff is on notice, he knows he's been injured. He doesn't need to know the extent of that injury. He doesn't need to know the role of everyone involved. At that point, the statute of limitations has begun, and he has that extended period of two years in which to get all the information necessary to do the legal research, to put together the complaint and ultimately to probably has to know the substantiality. The test is substantial harm. Now, at what point and what state for me as clearly as you can, what the substantial harm is, which occurred prior to the. Ten days left in this. There is difference in this. Sure. And I think the undisputed evidence shows that Mr. Roman was aware of a serious risk of substantial harm. Tell me what that substantial harm is that you're relying on to say that was the moment at which he had 1983 substantial. Well, I think here is the risk of harm. It is the danger that was posed by being put in close proximity to to Mr. Farley, who who is undisputedly a dangerous character. And when Mr. Romer spoke to his mental health provider near the end of May 2012, he indicated that he feared for his safety, called his cellmate a murderer. And then several days after that, the summit actually pinned him up against the wall and threatened him. And so when he went to speak to Mr. Boyer on on June 3rd, he was he was very clearly aware that he was facing a risk of substantial physical harm. And why is it relevant at all what he knew? I mean, why? I mean, if he communicates, you know, why are all these facts relevant? The point is what the defendant knew. And that is the wrongful conduct. The wrongful conduct is deliberate indifference in the face of a significant risk. Right. And that's right. To prove the claim, you do have to prove what the defendant knew. Now, now for a cruel or criminal conduct here is deliberate indifference, is it not? Yes, exactly. OK, then that's the same thing you have to do to prove the claim. I think that's right. And when he spoke to Mr. Boyer and and his his request was denied and prison officials were not willing to assist, then at that point he knew of the defendant's knowledge of the defendant's deliberate indifference. I see that my time has expired. Thank you. Thank you. Cases submitted. Thank you, counsel, for your argument.